UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

------------------------------------------------------X
                                :
**Anthony Barnett,**                       :
                                :
        **Plaintiff,**                :
                                :   Civil Action 10-3871 (ES)(CLW)
                                :
        v.                        :
**NJ Transit Corp., et al.,**       :   **OPINION**
                                :   **February 1, 2012**
        **Defendants.**         :
------------------------------------------------------X

**WALDOR, United States Magistrate Judge**

      Before the Court is Plaintiff Anthony Barnett's ("Plaintiff") motion for sanctions ("Motion for Sanctions") pursuant to Fed. R. Civ. P. 37. (Dkt. No. 35). Plaintiff has also submitted a Notice/Addendum to his Motion for Sanctions ("Addendum to Motion for Sanctions"). (Dkt. No. 36). Defendants New Jersey Transit Corp., New Jersey Rail Operations, Inc., John Calia, Norman Allen, Alan Zahn, Mark Mattis, Sean Kushnir, and Glen Eagan (collectively, "Defendants") submitted opposition on November 7, 2011 (Dkt. No. 40) and, on November 14, 2011, Plaintiff filed his reply brief. (Dkt. No. 42). The Court has fully reviewed and considered the parties' submissions pursuant to Fed. R. Civ. P. 78. For the reasons stated below, Plaintiff's Motion for Sanctions is DENIED.

**I. Background**

      Plaintiff filed this action on July 30, 2010 pursuant to Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e, *et seq.*, alleging claims of racial discrimination and retaliation. In particular, Plaintiff alleges that he received unusual and biased treatment from his employer after

witnessing and reporting another Locomotive Engineer Training Program ("LETP") student, Patrell Barnett, being verbally abused by defendant Alan Zahn during a training exercise. (Dkt. No. 7, Amended Complaint at 3). Additionally, Plaintiff alleges that exams administered by Defendants were "subjective, thereby discriminatory, test questions." Amended Complaint at 2. As a result, Plaintiff claims that he was subjected to a hostile work environment, which ultimately compelled him to resign on December 29, 2008. As relief for his claims, Plaintiff seeks injunctive, declaratory, and monetary relief (including but not limited to reinstatement, retroactive seniority, back pay, front pay, loss of benefits, retirement, prejudgment interest, and all costs incurred pursuing this action).

Plaintiff served Defendants with Requests for Production of Documents on March 30, 2011. (Dkt. No. 40, Murray Certif. Ex. A.). Defendants served answers in May 2011. On May 25, 2011, the Hon. Esther Salas, U.S.D.J., conducted a status conference to address discovery issues; namely, Defendants production of "computer hard drives for . . . defendants Alan Zahn and Mark Mattis." (Dkt. No. 43, the "Transcript" at 6-7). Mr. Barnett also questioned Defendants' search of custodian databases because said search was executed by certain named defendants - not a non-party. Id. at 14-15. Judge Salas explained that Plaintiff was not entitled to access Defendants' entire computer hard drive but ordered that Defendants retain a non-party to search Defendants' archived emails to ensure that all relevant discovery was produced. Id. at 21.

On August 31, 2011, Plaintiff notified Defendants of additional deficiencies in the production. First, Plaintiff asserted that he did not receive a custodial certification for documents previously produced by Defendants as ordered by this Court. Second, Plaintiff informed Defendants that they failed to produce operational evaluations of Plaintiff by Locomotive Engineer Charles Bingert ("Bingert/Barnett Evaluations") from October 15, 2008 through October 18, 2008, when

Plaintiff was a student in the LETP program. On September 15, 2011, this Court held a settlement and status conference at which time the Court addressed these and other alleged discrepancies. In accordance with said conference, the Court issued an Order requiring that Defendants produce the Bingert/Barnett Evaluations. (Dkt. No. 34).[1]

On October 6, 2011, Plaintiff filed the instant motion for sanctions pursuant to Fed. R. Civ. P. 37(a)(4) alleging that Defendants failed to produce "evaluations from Locomotive Engineer Charles Bingert for dates of October 13, 2008 through October 15, 2008." Motion for Sanctions at 2. Thereafter, on October 14, 2011, Plaintiff filed an Addendum to Motion for Sanctions in which he alleged that Defendants failed to cure several discovery violations. (Dkt. No. 36). The additional allegedly sanctionable conduct arises primarily from: (1) Defendants failure to produce certain emails on Defendants' computer systems and information concerning this system and (2) Defendants failure to produce documents including proof of investigation of Plaintiff's EEO complaints, file copies of alleged failed exams, and any evaluations from defendant Alan Zahn.

As relief for the above conduct, Plaintiff requests sanctions in the form of: (1) all costs associated with pursuing sanctions; (2) an order compelling disclosure of mirror images of the hard drives of computers utilized by Defendants; (3) jury instruction; (4) written redeposition of previously deposed individuals; and (5) monetary fines. (Dkt. No. 36, Pl.'s Proposed Order for Sanctions at 2).

**II. Discussion**

Rule 37 of the Federal Rules of Civil procedure authorizes the Court to sanction a party for

---

[1] The first discrepancy concerning custodial certification was cured at the September 15, 2011 settlement and status conference.

discovery abuses.[2] Specifically, Federal Rule of Civil Procedure 37(b)(2) provides, in pertinent part, that: "If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2). The purposes of Rule 37 are to: (1) penalize the culpable party or attorney; (2) deter others from engaging in similar conduct; (3) compensate the court and other parties for the expense caused by the abusive conduct; and (4) compel discovery and disclosure. Wachtel v. Health Net, Inc., 239 F.R.D. 81, 99-100 (D.N.J. 2006) (citing National Hockey League v. Metro Hockey Club, Inc., 427 U.S. 639, 643 (1976)).

"[A] district court's broad discretion to impose discovery sanctions pursuant to Rule 37(b) is limited by two standards[.]" Harris v. City of Philadelphia, 47 F.3d 1311, 1330 (3d Cir.1995). "First, any sanction must be 'just'; second, the [s]anction must be *specifically related* to the particular 'claim' which was at issue in the order to provide discovery." Id. (citing Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee, 456 U.S. 694, 707, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)). The Court must also make factual findings sufficient to support its decision to impose sanctions. Naviant Marketing Solutions, Inc. v. Larry Tucker, Inc., 339 F.3d 180, 185 (3d Cir. 2003) (citation omitted).

In addition to its discretion under Rule 37, "a district court's inherent powers include an investigation of whether a fraud has been committed upon the court and the power to dismiss a suit outright in response to litigation abuses." Wachtel, 329 F.R.D. at 100. See also Chambers v.

---

[2] Plaintiff improperly filed his Motion for Sanctions under Fed. R. Civ. P. 37(a)(4). Rule 37(a) of the Federal Rules of Civil Procedure provides that, on notice to other parties and all affected persons, "a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). "An evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Here, Plaintiff asserts that Defendants incomplete disclosure violated Orders executed by this Court and by the Honorable Esther Salas, U.S.D.J. Accordingly, Fed. R. Civ. P. 37(b)(2) is the proper subsection under which the Court will conduct its analysis.

NASCO, Inc., 501. U.S. 32, 44-46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).  A Court also has the power to assess attorney's fees when a party has acted in bad faith or for oppressive or disruptive reasons.  Id.  However, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion . . . a primary aspect of which is the ability to fashion an appropriate sanction for conduct which abuses the judicial process."  Id.

Mr. Barnett first argues that Defendants failure to produce the Bingert/Barnett Evaluations from October 13, 2008 through October 15, 2008, as ordered by this Court, is sanctionable.  This Court disagrees.  Instead, it appears that Defendants conducted a thorough - albeit unsuccessful - search to locate the evaluations. Specifically, John Smolcynzki, LETP Senior Training Specialist, first conducted a search of the LETP records.  Defendant's Opposition Brief ("Def.'s Opp. Br.") at 7.  Thereafter, Defendants contacted the Payroll Department and inquired whether Mr. Bingert submitted evaluations and time slips for the requested time period, October 15, 2008 through October 18, 2008.[3]  Id.  The Payroll Department reported that they had no Bingert/Barnett Evaluations.[4]  Moreover, because Mr. Bingert was not on the list of Locomotive Engineers approved to instruct and evaluate students and Plaintiff was not assigned to operate the train with Mr. Bingert, Defendants concluded that Mr. Bingert may not have submitted evaluations for Mr. Barnett.  Id. Later, when Mr. Bingert was contacted directly to address this issue, he recalled working with Mr.

---

[3] Mr. Barnett argues that this Court should impose sanctions because Defendants failed to produce the Bingert/Barnett Evaluations from October 13, 2008 through October 15, 2008. However, Plaintiff requested operational evaluations from October 15, 2008 through October 18, 2008 in his August 31, 2011 discrepancy addendum. (Dkt. No. 33). Defendants did not become aware of the different dates requested until after the initial search was performed.

[4] Defendants have represented to the Court that New Jersey Transit's procedure requires Locomotive Engineers to submit the Locomotive Trainee Evaluations forms rating the student's performance attached to their time slips to the Payroll Department. (Dkt. No. 40, Avery Certif. ¶ 3). The Payroll Department removes the evaluation and either sends it by mail to the LETP, or places it in a box that is picked up once a month by an LETP instructor. Id. at 4.

Barnettt and believed he completed an evaluation and forwarded it to the Payroll Department. Defendants contend that the evaluations were thus likely lost when forwarded from the Payroll Department in 2008.  In Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 334 (3d Cir. 1995), the Third Circuit made clear that "[n]o unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce is otherwise accounted for."  Here, Defendants inability to locate the evaluations appears to have been accidental and Plaintiff has provided no evidence to the contrary.[5]

Mr. Barnett further contends that Defendants failure to produce the Bingert/Barnett Evaluations injures Plaintiff because Mr. Bingert's evaluations would show, at a minimum, that Mr. Barnett performed well thus potentially undercutting Mr. Zahn's characterization of Mr. Barnett as a "weak student."[6]  However, Mr. Bingert has certified that he recalls having Mr. Barnett as a student and that Mr. Barnett performed satisfactorily. (Dkt. No. 41, Bingert Certif. ¶ 4) ("I remember having Barnett train handle with me from October 13, 2008 through October 15, 2008.  There was [sic] no exceptions to his train handling.").  Additionally, Mr. Barnett is in possession of several other instructor evaluations rating his train handling performance as satisfactory.  As such, any prejudice resulting from the lost documents is minimal, if not non-existent.

---

[5] Mr. Barnett takes issue with Defendants' contention that no evaluations existed because Mr. Bingert was not listed as an authorized instructor engineer.  Mr. Barnett has provided the Court with evidence that other engineers had submitted evaluations of Plaintiff although not named on the authorized list. (Dkt. No. 42 at 2).  Be that as it may, Defendants were unable to locate this particular evaluation and, as noted below, later obtained a certification from Mr. Bingert evaluating Plaintiff's performance.  The Court cannot infer bad faith or dilatory motive on the part of Defendants from this conduct.

[6] As part of its initial document production, Defendants produced an email from Defendant Zahn to John Smolcynzki in which Zahn complains of New Jersey Transit's treatment of weak students, including Mr. Barnett.  Motion for Sanctions at 13.

Next, Plaintiff alleges that Defendants failed to cure seven (7) discovery violations related to his March 30, 2011 Request for Production of Documents. Addendum to Motion for Sanctions at 2-3.[7] Four of these violations refer to Defendants alleged failure to produce certain emails on Defendants' hard drives. Plaintiff argues that Defendants production is willfully incomplete and in violation of Judge Salas's May 25, 2011 directive. As such, Mr. Barnett requests unfettered access to these hard drives. The Court has already denied such relief. Specifically, at the May 25, 2011 conference, Judge Salas addressed Mr. Barnett's concerns with Defendants' email production and denied Mr. Barnett's request for a mirror image of Defendants' hard drives. Judge Salas explained that if such access were permitted, Defendants would be forced to provide Plaintiff with irrelevant and potentially privileged information. Transcript at 10. Such excessive access would only be permitted if Mr. Barnett could point to more specific deficiencies. Id. at 23. Nevertheless, to ensure production was complete, Judge Salas orally ordered that an independent non-party to the suit perform a search of all of Defendants' relevant custodial databases, pull, and send all supplemental discovery to Mr. Barnett. Id. at 14-15. Defendants complied with this order and sent Mr. Barnett the results of their search. Def.'s Opp. Br. at 10. The Court thus finds that Defendants fulfilled their discovery obligations regarding this issue.

The remaining violations concern Defendants alleged failure to produce documents including proof of investigation of Plaintiff's EEO complaints, file copies of alleged failed exams, and any evaluations from defendant Alan Zahn. Defendants assert that the requested documents either do not exist or are privileged and have certified to same. Def.'s Opp. Br. at 11; Dkt. No. 40, Murray

---

[7] Mr. Barnett concedes that, as of August 9, 2011, the remaining twenty-five (25) failures have been cured. There is no indication that Defendants' delayed production was in bad faith. As such, sanctions are not warranted. See Yeisley v. PA State Police, No. 05-1650, 2008 WL 906465 (M.D.Pa. Mar. 31, 2008).

Certif. Ex. A. Plaintiff has not presented any evidence to suggest that Defendants' representations are inaccurate. If Mr. Barnett takes issue with Defendants' privilege designation, he is free to object. The Court acknowledges Mr. Barnett's diligence in seeing that he obtain all documents necessary in assisting him prepare his case. However, Plaintiff has not shown this Court that Defendants failed to obey a Court order to provide or permit discovery within the meaning of Fed. R. Civ. P. 37(b)(2). Accordingly, the imposition of discovery sanctions is not just. See Harris, 47 F.3d at 1330.

### III. Conclusion

Based upon the foregoing, the Court will deny Plaintiff's Motion for Sanctions. An appropriate Order will be issued.

s/ Cathy L. Waldor<br>
**CATHY L. WALDOR**<br>
**UNITED STATES MAGISTRATE JUDGE**